**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ADT LLC** § | | |
| § | | |
| *Plaintiff*, § | Case No. 4:19-cv-4550 | |
| § | | |
| **v.** § | **JURY TRIAL DEMANDED** | |
| § | | |
| **DWAYNE MILES, JOHN WALKER, and** § | | |
| **WAYNE WISE,** § | | |
| § | | |
| *Defendants*. § | | |

**PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT,
APPLICATION FOR TEMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION**

Plaintiff ADT LLC ("ADT") files this Verified Original Complaint, Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction against Dwayne Miles ("Miles"), John Walker ("Walker"), and Wayne Wise ("Wise"), and would show the Court as follows:

### I. PARTIES

1. ADT LLC is a corporation organized under the laws of Delaware and is authorized to do business in the State of Texas. Its corporate headquarters are located in Boca Raton, Florida.

2. Defendant Dwayne Miles is an individual who resides in and is a citizen of Fort Bend County County, Texas. He may be served with process at his residence, 9114 Basin Ridge Lane, Richmond, Texas 77407, or his current place of business, 8323 N. Eldridge Parkway, Houston, Texas 77041.

3. Defendant John Walker is an individual who resides in and is a citizen of Fort Bend County, Texas. He may be served with process at his residence, 3926 Elm Stream Court,

Fresno, Texas, or his current place of business, 8323 N. Eldridge Parkway, Houston, Texas 77041.

4.  Defendant Wayne Wise is an individual who resides in and is a citizen of Brazoria County, Texas.  He may be served with process at his residence, 12325 Shadow Creek Parkway, Apt. 15101, Pearland, Texas, or his current place of business, 8323 N. Eldridge Parkway, Houston, Texas 77041.

## II.  JURISDICTION

5.  This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331, as Plaintiff asserts claims that arise under the laws of the United States, namely, the federal Defend Trade Secrets Act and Computer Fraud and Abuse Act.

6.  The Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Plaintiff's federal-question claims that they form part of the same case or controversy.

7.  This Court has personal jurisdiction over Defendants because they reside and work in counties located within the Southern District of Texas.

8.  Venue of this action lies in the Southern District of Texas because Defendants Miles and Walker reside in Fort Bend County, Wise resides in Brazoria County, and the conduct giving rise to the causes of action set forth below and other unlawful activity alleged herein occurred, in significant part, in Harris County.

## III.  FACTUAL BACKGROUND

**Defendants' Employment by ADT**

9. ADT is a leader in home and commercial security solutions. Among other services and products, ADT provides its customers with installation, support, and monitoring of security systems.

10. ADT hired Wise and Miles on August 15, 2017, and February 19, 2018, respectively. They worked as commercial sales representatives throughout their employment with ADT. Walker was hired by ADT on or about May 16, 2016. He worked as a commercial sales manager throughout his employment with ADT. Miles and Wise reported directly to Walker.

11. Defendant Walker was terminated on or about February 1, 2019. Wise resigned on July 11, 2019, and Miles resigned on August 28, 2019.

12. As commercial sales representatives, Miles and Wise worked directly with customers to assist with their security needs. Walker was responsible for the entire Houston South area commercial sales team. In this role, Walker also worked directly with ADT customers. Because of the nature of the services provided by ADT, maintaining strong relationships with customers is critical, and prompt and regular communication with them is vital. All three Defendants were responsible for customer proposals and contracts.

**ADT provided Defendants confidential information and required that they use it only for ADT**

13. In connection with their employment, Defendants were provided with confidential intellectual property belonging to ADT, and were required to maintain its confidentiality before and after their employment ended.

3

14. In fact, in accepting employment with ADT, Defendant Walker agreed that during his employment with ADT and after termination, he would "keep any trade secret information confidential" and not use such information for his own behalf or on behalf of another. See Exhibit A, Walker Offer of Employment.

15. Among the confidential items provided to Defendants in support of their employment were marketing plans, pricing information, technical specifications on products and services offered by ADT, and customer contact and other customer information, including, but not limited to, customer methods of operation and preferences. ADT developed and acquired this information over a period of time and at a significant cost to the Company. ADT does not share this information with its competitors. This information provides ADT a competitive advantage over its competitors.

16. Defendants and ADT entered into Confidentiality and New Inventions Agreements ("Confidentiality Agreements") attached as Exhibits B through D. Defendants agreed that during their employment and any time thereafter, they would not "make any independent use of, or disclose to any other person or organization except as authorized by Employer [ADT] in writing, any confidential information of [ADT]." Additionally, Defendants agreed that they would not "directly, or indirectly, use, make available, sell, disclose or otherwise communicate to any person, other than in the course of [ADT's] assigned duties and for the benefit of [ADT], any trade secret information relating to [ADT]" which was obtained during their employment.

17. The Confidentiality Agreements include the following provisions regarding ownership of ADT proprietary information:

> "Employee agrees that all right, title, and interest in any and all ideas, representations, textual material, illustrations, original works of authorship,

4

developments, inventions, concepts, … trade secrets, and other items developed and/or conceived by Employee … during the course of or as a result of Employee's employment with [ADT] …, will be the sole and exclusive property of [ADT]."

18. Furthermore, the Code of Conduct ("Code") (Exhibit E), provided to Defendants as indicated in Exhibits F through H, included similar admonitions against the use and disclosure of confidential ADT material:

   a. "ADT's intellectual property includes some of our most valuable assets." Exhibit E, Code, page 21.

   b. "Every team member is responsible for protecting our intellectual property." Exhibit E, Code, page 21.

   c. "We commit to use and protect company assets appropriately and productively. Company assets include physical property, financial assets, proprietary information, data, records, and intellectual property such as brands, inventions, and copyrights." Exhibit E, Code, page 20.

   d. "Only share company assets outside the company with prior authorization." Exhibit E, Code, page 20.

19. In addition to maintaining the policies set forth above and requiring employees to sign confidentiality agreements, ADT maintained rigorous information technology security protocols, including requiring usernames and passwords for employees, and allowing various levels of access to sensitive information depending upon position.

**Defendants agreed to refrain from soliciting employees and customers**

20. Finally, Defendants agreed that they would not solicit employees to leave their employment with ADT, or interfere with the relationships between ADT and its customers. Exhibits A, I and J. Specifically, all Defendants agreed that they would not:

   a. For the two year period following their separation of employment, directly or indirectly, on behalf of themselves or any other person or entity, solicit, recruit, or induce any employee to leave their employment

5

with ADT, or "or hire or knowingly take any action to assist or aid any other person or entity in identifying or hiring any such employee."

Exhibits A, I and J.

21. Defendants Miles and Wise also executed Sales Compensation Certification Forms wherein they agreed to refrain from using "any trade secret information to solicit, divert, accept or appropriate, or attempt to solicit, divert, accept or appropriate any customer," or prospective customer of ADT with whom they had contact and/or about whom they had access to confidential information, "for the purposes of providing services or products or seeking to provide services or products that are the same or similar to those provided by ADT." Exhibits I and J.

22. Similarly, in his acceptance of employment, Defendant Walker agreed that he would not directly or indirectly, use "any trade secret information to attempt to persuade or solicit any customer of ADT… to cease to do business with ADT…, or to reduce the amount of business it has done or contemplates doing with ADT." Exhibit A.

**Defendants breached their obligations to ADT and interfered with ADT's business relationships**

23. Defendant Walker's employment with ADT was separated on or about February 1, 2019. Thereafter, he began working for a competitor, Johnson Controls, in a similar capacity. Upon assuming his new position, Walker actively recruited employees of ADT. Conveniently, several months after Walker joined Johnson Controls, Wise and Miles resigned their positions with ADT and also accepted employment with Johnson Controls in sales roles. In fact, Defendant Miles was observed attending sales training for Johnson Controls prior to resigning his employment at ADT.

24. Following their separations of employment, Defendants Miles and Wise misappropriated confidential ADT material. After the departures of Miles and Wise, ADT retained a forensic computer analyst to examine the laptop computers used while these Defendants were employed by ADT. Among other information, the analysis revealed the following:

      a. On July 11, 2019 (the date of his resignation), Wise accessed a pdf file titled "Taramontina Alarm 061319." The file was accessed on a removable flash drive with volume serial number C109FA0B.

      b. On August 28, 2019 (the date of his resignation), Miles accessed various files on his ADT assigned computer located within the "Agreements and Proposal/Sekisui" folder, and also used a USB drive serial number 6&12b7ce03.

25. In addition to their misappropriation of confidential material, Defendants also conspired to interfere with ADT's business relationships by improperly soliciting business from ADT customers. Specifically, Miles and Walker solicited business opportunities from ADT customer, Sekisui. Miles also solicited business from ADT customer, Nouryon.

26. Additionally, Defendants interfered with ADT's relationships with its employees. Walker actively recruited ADT employees to work at Johnson Controls, and Wise threatened current employees that other staff members would be resigning from ADT to follow him to his current employer.

27. ADT has unsuccessfully made demand on Defendants to comply with their legal obligations by returning all ADT confidential information. Attached as Exhibits K though M are cease-and-desist letters sent to Defendants reminding them of their obligations to ADT. As of

the filing of this complaint, no materials were returned. Additionally, Walker denied diverting business or otherwise engaging in unlawful conduct.

### IV. CAUSES OF ACTION

#### A. BREACH OF CONTRACT

28. ADT incorporates paragraphs 1-27 by reference as though fully set forth herein.

29. The Confidentiality Agreements are enforceable contracts between ADT and Defendants.

30. Defendants Wise and Miles breached the Confidentiality Agreements by placing ADT confidential material on external storage devices and retaining it for use in support of their employment at Johnson Controls.

31. Defendant Walker breached the terms of his offer of employment by soliciting employees and customers of ADT.

32. Defendants Wise and Miles similarly breached the terms of their Sales Compensation Agreements. Specifically, Defendant Wise has threatened current employees of ADT that additional staff members will be resigning their employment with the company to follow him to Johnson Controls. Furthermore, Miles contacted a customer (Nouryon) regarding a proposal submitted on behalf of his current employer. Walker and Miles also conspired to pursue business from Sekisui, a current customer of ADT.

33. Defendants' breach has caused ADT irreparable harm and damages, and will continue to do so unless immediately restrained from further breaches of the Agreements.

#### B. VIOLATION OF THE FEDERAL DEFEND TRADE SECRETS ACT OF 2016 (18 U.S.C. § 1836(b))

34. ADT incorporates paragraphs 1-33 by reference as though fully set forth herein.

35. ADT holds many trade secrets. Defendants had access to ADT's trade secrets,

including, but not limited to customer lists, proposals, contracts, and pricing information.

36. ADT spends considerable time and resources maintaining the confidentiality of its trade secrets.

37. ADT has taken measures to prevent the unauthorized disclosure or use of its trade secret information.

38. Defendants Miles and Wise acquired and accessed ADT's confidential information through improper means.

39. As a direct and proximate result of Defendants' conduct, ADT has suffered injury.

C. **VIOLATION OF THE FEDERAL COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030) (AGAINST WISE AND MILES)**

40. ADT incorporates paragraphs 1-39 by reference as though fully set forth herein.

41. ADT's computer systems to which Miles and Wise gained access constitute "computers" under 18 U.S.C. § 1030(e)(1) because they store electronic data, and are "protected computers" within 18 U.S.C. § 1030(e)(2) because they are used in interstate or foreign commerce and/or communication.

42. Upon information and belief, Miles and Wise intentionally accessed ADT's computer systems without authorization and/or outside the scope of their authorized access in order to alter, obtain, download, print, and/or use information, trade secrets, and other confidential information from ADT's protected computers.

43. Miles and Wise engaged in the improper and unlawful access with the intent to defraud ADT.

44. ADT has suffered and will continue to suffer irreparable harm and loss, and has sustained damages including but not limited to loss of capital, loss of valuable business, loss of profits and future profits, and loss of goodwill, in an amount to be determined at trial, which

damages are ongoing and continue unabated at the time of the filing of this Complaint.

D. **TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**

45. ADT incorporates paragraphs 1-44 by reference as though fully set forth herein.

46. Defendants Wise and Walker tortiously interfered with the employment relationships between ADT and its employees.

47. Wise, Walker, and Miles further interfered ADT's business relationships by soliciting current and prospective customers using ADT confidential information and trade secrets.

48. As a result of Defendants' tortious interference with ADT's relationships with its employees and customers, ADT has suffered and continues to suffer injury.

E. **APPLICATION FOR TEMPORARY, PRELIMINARY AND PERMANENT INJUNCTIONS**

49. ADT incorporates paragraphs 1-48 by reference as though fully set forth herein.

50. Defendants' conduct is wrongful because they are in breach of their contracts, and have misappropriated confidential information and trade secrets. Should Defendants' conduct go unabated, they could reveal or destroy ADT's confidential information or trade secrets and disadvantage ADT. Additionally, Defendants' breach of their contracts will continue to cause irreparable harm to ADT for which there is no adequate remedy at law, including, without limitation, loss of existing employees, loss of business opportunities, and loss of goodwill and business reputation. Such harm is not readily reduced to dollar damages.

51. There is a substantial likelihood that ADT will prevail on the merits. Defendants Miles and Wise violated the terms of their Confidentiality and Sales Compensation Agreements by retaining company information and utilizing it to solicit ADT customers, and in the case of Defendant Wise, by recruiting ADT employees. Defendant Walker violated the terms of his

employment offer and Confidentiality Agreement in the same manner.

52. ADT seeks a temporary restraining order until a date set for hearing (not to exceed fourteen days from the date of the order) and, after notice and a hearing, a preliminary injunction preventing Defendants from further breach of the applicable agreements, and restricting Defendants from use and further misappropriation of ADT's trade secrets and confidential information until a trial on the merits. A temporary restraining order and preliminary injunction are necessary to preserve ADT's rights pending a trial on the merits and is warranted by the plain language and requirements of the Confidentiality Agreements.

53. The threatened injury to ADT outweighs any possible damage to Defendants because an injunction would simply require Defendants to live up to their obligations under the respective agreements.

54. The public interest is served by an injunction as it protects ADT's confidential information and goodwill.

55. Specifically, ADT requests that this Court:

(a) Issue a temporary restraining order requiring Defendants to return all confidential, proprietary, and trade secret information belonging to ADT that is still within their possession, including all customer lists and pricing information;

(b) Issue a temporary restraining order enjoining and restraining Defendants from:

  i. Soliciting, interviewing, recruiting, making offers to, or employing any ADT employee, who has been employed by ADT within the last two years; and

  ii. Making use of confidential, proprietary and trade secret information belonging to ADT for any reason, including solicitation of ADT customers and employees.

(c) Issue an Order requiring Defendants Miles and Wise to make available for forensic imaging any electronic device, including flash drives and external hard drives, containing material relating to ADT within 48 hours;

11

(d) Issue a preliminary injunction, enjoining and restraining Defendants from the conduct set forth in Paragraph (b) above pending final determination of this action; and

(e) Issue a permanent injunction enjoining and restraining Defendants from the conduct set forth in Paragraph (b).

## V. ATTORNEYS' FEES

56. ADT is entitled to recover reasonable and necessary attorneys' fees under Chapter 38 of the Texas Civil Practice & Remedies Code because this suit is in part for breach of contract.

## VI. CONDITIONS PRECEDENT

57. All conditions precedent to ADT's claim for relief have been performed or have occurred, or were otherwise met, waived, or excused.

## VII. JURY DEMAND

58. ADT demands a jury.

## VIII. RELIEF REQUESTED

59. ADT prays judgment in its favor and against Defendants for: temporary, preliminary, and permanent injunctive relief, for damages as are fair and reasonable, including actual damages, punitive damages, equitable relief, pre-judgment and post-judgment interest, costs, and attorneys' fees, and for such other and further relief as the Court may deem just and proper.

Dated: November 20, 2019                             Respectfully submitted,

*/s/ Stephen Roppolo*
**STEPHEN J. ROPPOLO**
**ATTORNEY-IN-CHARGE**
State Bar No.: 00797939
S.D. No.: 21694
**FISHER & PHILLIPS LLP**
910 Louisiana St., Suite 4000
Houston, Texas 77002
Telephone: (713) 292-0150
Facsimile: (713) 292-0151
sroppolo@fisherphillips.com

**OF COUNSEL**

**PAMELA D. WILLIAMS**
State Bar No.: 00784017
S.D. No.: 26863
**FISHER & PHILLIPS LLP**
910 Louisiana St., Suite 4000
Houston, Texas 77002
Telephone: (713) 292-0150
Facsimile: (713) 292-0151
pwilliams@fisherphillips.com

**ATTORNEYS FOR PLAINTIFF, ADT LLC**